**UNITED STATES DISTRICT COURT**

**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| LYLE FUGLESTAD | Case No.: |
| Plaintiff, | |
| vs. | |
| AJC LOGISTICS LLC (d.b.a. AJC FREIGHT SOLUTIONS), KONNECT THREE SOLUTIONS, LLC, KONNECT THREE LLC, and the ESTATE OF ERIC SHAWN COMER, | **COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. | |

COMES NOW Plaintiff Lyle Fuglestad, by and through his Attorneys, Russell D. Nicolet and Lindsay C. Lien Amin, Nicolet Law Office S.C., and for his Complaint against Defendants, states the following:

1. This case arises out of a June 11, 2025, commercial vehicle collision in Cass County, North Dakota. Eric Comer, driving a cement truck on behalf of AJC Logistics LLC, Konnect Three Solutions LLC, and Konnect Three LLC, pulled out in front of Plaintiff Lyle Fuglestad's oncoming vehicle. Plaintiff Fuglestad sustained significant traumatic injuries requiring weeks of hospitalization.

**PARTIES AND JURISDICTION**

2. Plaintiff Lyle Fuglestad is an adult resident of the State of North Dakota and his principal address is 611 Harvey Ave, Minto, North Dakota 58261.

3. Defendant AJC Logistics LLC doing business as AJC Freight Solutions (hereinafter "AJC Logistics") is a Georgia domestic limited liability company with its principal address located in Fulton County at 1000 Abernathy Road NE, Suite 600, Atlanta, Georgia 30328.

1

4.      Defendant Konnect Three Solutions LLC (hereinafter Konnect Three Solutions) is a Georgia domestic limited liability company with its principal address located in Bibb County at 295 Cleveland Ave, Apt. 1, Macon, Georgia 31204.

5.      Defendant Konnect Three LLC is a Delaware limited liability company with a registered agent of Northwest Registered Agent Service, Inc., located at 8 the Green, Suite B, Dover, Delaware 19901.

6.      Upon information and belief, Defendants Konnect Three LLC and Konnect Three Solutions LLC acted as one entity or in a joint venture or enterprise, sharing operations and U.S. DOT number 4098950, and are hereinafter jointly referred to throughout this complaint as "Konnect Three Solutions."

7.      Defendant Estate of Eric Shawn Comer is the estate of the decedent Eric Shawn Comer, who was an adult resident of the State of Florida, with a home address of 2840 Economy Street, Ft. Meyers, Florida 33916.

8.      This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000.

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District of North Dakota.

## FACTUAL BACKGROUND

10.     The collision that injured Plaintiff Lyle Fuglestad involved a newly manufactured 2026 Western Star cement truck purchased by Concrete Mobile, LLC (hereinafter "Concrete Mobile") from a Dodge Center, Minnesota-based manufacturer.

11.     Concrete Mobile needed to get its new cement truck from Minnesota to North Dakota.

12. Upon information and belief, the gross vehicle weight rating (GVWR) of the 2026 Western Star cement mixer exceeded 10,000 pounds.

13. Because of the size of the truck and its movement across state boundaries, the federal safety regulations, found at 49 CFR §§ 301-399 and commonly referred to as the Federal Motor Carrier Safety Regulations ("FMCSR"), are directly applicable to the facts of this case.

14. The FMCSR have also been partially adopted by all 50 states, including North Dakota.

15. The FMCSR are administered by the Federal Motor Carrier Safety Administration ("FMCSA"), a division of the United States Department of Transportation, as well as state-level authorities.

16. These regulations exist because Congress determined that the rate, number, and severity of commercial truck crashes on America's highways demanded a uniform, comprehensive federal response.

17. To that end, the FMCSR contain regulations regarding driver qualifications, employment verification, inspections, and appropriate hours of service for drivers, among other things, and are aimed at improving safety.

18. Additionally, the regulations require motor carriers to comply with these regulations to receive operating authority. Motor carriers must also carry insurance, undergo a safety audit, and are subject to new entrant safety monitoring.

### AJC Logistics Arranges Delivery of Concrete Mobile's Truck

19. Defendant AJC Logistics has operations throughout the United States and Canada, promising its customers that the company will "exceed expectations by delivering efficient and professional service every day."

20.     AJC Logistics' operations are subject to the Federal Motor Carrier Safety Regulations.

21.     Regrettably, according to its website, AJC Logistics does not mention safety among its company values:



Source: https://ajcfreight.com/about-us (accessed June 22, 2026).

22.     AJC Logistics contracts with other companies who supply drivers for some loads or trips.

23.     Carriers are told that they will get "Fast, Flexible" payments from AJC Logistics, and that the company uses "tech tracking to eliminate unnecessary check calls to our drivers." Source: https://ajcfreight.com/carriers (accessed June 22, 2026).

24.     Its website permits any carrier to submit an application to get "onboarded" with AJC Freight Solutions, linking to a portal for easy submission:



Source: https://highway.com/onboarding/sign-up (accessed June 24, 2026).

### **AJC Logistics Hires Konnect Three Solutions**

25.    Defendant Konnect Three Solutions is among the carriers that worked with AJC Logistics.

26.    In April 2025, AJC Logistics entered into a "Broker-Carrier Agreement" with Konnect Three Solutions:



5

27.     However, the e-signed copy of the Broker-Carrier Agreement shows an execution date of January 25, 2024, for AJC Logistics, suggesting the companies shared a longer relationship:

| CARRIER: | BROKER: |
| --- | --- |
| Carrier Name: __KONNECT THREE SOLUTIONS LLC__ | **AJC LOGISTICS, LLC D/B/A AJC FREIGHT SOLUTIONS**, a Georgia limited liability company |
| 295 CLEVELAND AVE, MACON, GA, 31204 | *Phil Loveland* |
| Signature: __/s/ Kevin Taylor__ | Signed: 1/25/2024 |
| By: (Print Name) __Kevin Taylor__ | By: Phil Loveland |
| Title: __AUTHORIZED REPRESENTATIVE__ | Title: Director, Corporate Risk & Insurance |

28.     Konnect Three Solutions is owned by Kevin Taylor. His wife, Lola Taylor, worked as a dispatcher for the company.

29.     As motor carriers, Defendants AJC Logistics and Konnect Three Solutions were subject to the FMCSR at the time of the collision, and at all relevant times prior to the collision, pursuant to 49 CFR § 390.3(e).

30.     "Konnect Three" applied with the U.S. Department of Transportation for a DOT number and was granted a registration number (#4098950) as of July 6, 2023, but was told by FMCSA that it needed to apply for and be granted operating authority, which also required a "New Entrant Safety Audit":



31.    Konnect Three Solutions did not complete the safety audit, and was informed again that it needed to complete the New Entrant Safety Audit on July 8, 2024:



32.     In Konnect Three Solutions' application for authority to the FMCSA, Kevin Taylor reported the company would only operate vehicles under 10,000 pounds GVWR, exempting the company from some of the FMCSR, and certified the application under oath on November 16, 2024:

| | |
|---|---|
| **SECTION VIII** | This oath applies to all supplemental filings to this application. The signature must be that of applicant, not legal representative. |
| **Applicant's Oath** | I, KEVIN TAYLOR - CEO , verify under penalty of |

Name and title

perjury, under the laws of the United States of America, that all information supplied on this form or relating to this application is true and correct. Further, I certify that I am qualified and authorized to file this application. I know that willful misstatements or omissions of material facts constitute Federal criminal violations punishable under 18 U.S.C. 1001 by imprisonment up to 5 years and fines up to $10,000 for each offense. Additionally, these misstatements are punishable as perjury under 18 U.S.C. 1621, which provides for fines up to $2,000 or imprisonment up to 5 years for each offense.

I further certify under penalty of perjury, under the laws of the United States, that I have not been convicted, after September 1, 1989, of any Federal or State offense involving the distribution or possession of a controlled substance, or that if I have been so convicted, I am not ineligible to receive Federal benefits, either by court order or operation of law, pursuant to Section 5301 of the Anti-Drug Abuse Act of 1988 (21 U.S.C. 862)

**Finally, I certify that applicant is not domiciled in Mexico or owned or controlled by persons of that country.** (Note: This portion of Applicant's oath does not pertain to applicants that are U.S.-based enterprises owned or controlled by persons of Mexico seeking to provide truck services for the transportation of international cargo.)

Signature   KEVIN TAYLOR                                         Date   11/16/2024

33.     On January 22, 2025, a Konnect Three Solutions driver was inspected in Albany, New York—receiving a violation for violating hours-of-service requirements, resulting in an out-of-service violation.

34.     On April 16, 2025, Konnect Three Solutions received another out-of-service violation for an hours-of-service violation in Valley Springs, South Dakota.

35.     On May 5, 2025, Konnect Three Solutions had three violations from an inspection in Palm City, Florida.

36.     On May 9, 2025, the FMCSA advised Konnect Three Solutions of "significant non-

compliance" with its hours-of-service requirements, informing the company that a safety auditor would perform an audit on the company's operations.

37.    As of August 7, 2025, a safety auditor had tried to contact Konnect Three Solutions on three separate occasions with no response, which the FMCSA considers a refusal to submit to a safety audit under 49 CFR § 385.337.

38.    AJC Logistics did not appropriately verify Konnect Three Solutions' safety record or its compliance with the FMCSR.

39.    AJC Logistics did not confirm Konnect Three Solutions had ever passed a safety audit, nor did it independently audit Konnect Three Solutions' safety.

40.    Despite Konnect Three Solutions' extreme non-compliance with federal safety regulations—including those designed to keep fatigued drivers off the roads—AJC Logistics hired Konnect Three Solutions for interstate shipment of cement trucks.

**Konnect Three Solutions Hires Eric Comer Despite Long History of Offenses**

41.    Konnect Three Solutions did not follow FMCSR requirements that the company obtain detailed background information and verify the qualifications of its drivers.

42.    Konnect Three Solutions hired Decedent Eric Comer as a commercial driver but failed to verify his driving and criminal history.

43.    Publicly available records show Comer had a long history of disregarding the law— including traffic rules.

44.    In 2014, Comer broke into his ex-girlfriend's house and was later convicted of trespassing, battery, and second-degree theft. (Lee County Case No. 14CF017306).

45.    In 2021, Comer paid a speeding ticket for going 71 miles per hour in a 45 miles per hour zone. (Lee County Case No. 21TR005453).

9

46.     In December 2023, Comer was cited for failing to obey a traffic control device, again electing to go to traffic school. (Lee County Case No. 24TR000241).

47.     In March 2024, Comer was adjudicated guilty of speeding 65 miles per hour in a 45 miles per hour zone. (Lee County Case No. 24TR011382).

48.     On April 16, 2025, Comer—working as a professional driver for Konnect Three Solutions at the time—underwent an inspection in Valley Springs, South Dakota.

49.     In the South Dakota inspection, Comer was not incompliance with his hours-of-service reporting requirements, resulting in an out-of-service violation.

50.     Comer rear-ended another vehicle while operating an employer-owned vehicle on June 23, 2024, and was sued in Lee County, Florida on May 12, 2025 (*Barrs v. Coolair Conditioning, Inc.*).

51.     Konnect Three Solutions apparently failed to verify Comer's work history, as a proper § 391.23 employment history inquiry would have likely revealed this collision or pending claim.

### The Collision

52.     Following AJC Logistics' selection of Konnect Three Solutions and Konnect Three Solutions' hiring of Eric Comer, the trucking companies put Comer behind the wheel of the brand-new 2026 Western Star cement truck from Dodge Center, Minnesota to Minot, North Dakota.

53.     On June 11, 2025, around 8:20 p.m., Comer was driving the new cement truck westbound on County Road 26 in Cass County, North Dakota for Concrete Mobile and Defendants Konnect Three/Konnect Three Solutions and AJC Logistics.

54.     Comer approached the intersection of Highway 18, which runs perpendicular to County Road 26 in a North-South fashion.

55. The intersection is controlled by stop signs on County Road 26, which are preceded by flags, reflectors, and rumble strips.

56. North and southbound traffic on Highway 18 does not stop and has right-of-way.

57. As Comer approached the intersection, Plaintiff Lyle Fuglestad was heading northbound on Highway 18 with a load of potatoes.

58. Comer stopped at the stop sign on County Road 26 and then proceeded onto Highway 18 without yielding to Fuglestad's northbound truck.

59. Plaintiff Fuglestad braked, but was unable to avoid striking the cement truck.

60. The collision forced both vehicles into the ditch on the northwest corner of the intersection, causing irreparable damage to both:



61. A post-crash inspection of Comer's truck revealed that he had not even begun a logbook entry for the ultimate trip, and that he was carrying two cell phones.

62. Regrettably, Comer died on the scene.

**Plaintiff Lyle Fuglestad's Injuries**

63.     Plaintiff Fuglestad, though alive, suffered serious injuries and was taken by ambulance to the hospital.

64.     An initial exam showed that Plaintiff Lyle Fuglestad sustained catastrophic polytrauma injuries, including a nondisplaced sternal fracture, right sixth rib fracture, right anterior third and fourth costal cartilage fractures, right pulmonary contusion, left distal radius and ulnar fractures, a severely comminuted right distal femur fracture with intra-articular extension, a right patellar fracture, and acute blood loss anemia.

65.     On June 14, 2025, Plaintiff underwent open reduction and internal fixation ("ORIF") of the right distal femur, and on July 7, 2025, underwent a second surgery—ORIF of the left distal radius and ulna fracture—after closed reduction failed and the fracture displaced.

66.     Plaintiff was hospitalized at Sanford Medical Center from June 11 through June 18, 2025, transferred to inpatient rehabilitation, and then admitted to Unity Medical Center in Grafton, North Dakota for continued swing-bed rehabilitation from July 10 through August 20, 2025.

67.     In September 2025, Plaintiff was emergently re-admitted to Sanford Medical Center after developing a lateral thigh abscess with septic joint involvement at the site of his right femur hardware, requiring surgical irrigation and debridement with wound VAC application.

68.     Plaintiff was again admitted to Unity Medical Center from September 30 through November 17, 2025, to receive IV antibiotics and continued physical and occupational therapy, during which time he remained non-weight-bearing on his right lower extremity.

69.     Plaintiff continues to require ongoing physical therapy, ambulates with a cane, and suffers from permanent limitations in mobility, strength, and functional independence—injuries that have permanently altered every aspect of his daily life.

70. Plaintiff has been unable to work since the collision.

71. Plaintiff Lyle Fuglestad suffered permanent and severe physical injuries; has suffered and will suffer emotional distress and anguish, bodily pain and discomfort, humiliation, embarrassment, disability, and loss of enjoyment of life; has incurred and will continue to incur hospital and medical expenses; and, as a further direct result thereof, has suffered and will continue to suffer loss of earnings, wages, earning capacity, and other damages, all to his damage in a sum to be proven at the trial of this matter, with his damages exceeding Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

<u>**COUNT I – NEGLIGENCE**</u>
<u>**Estate of Eric Comer**</u>

72. Plaintiff realleges the preceding allegations as if set forth fully here.

73. Decedent Eric Comer owed Plaintiff Lyle Fuglestad a duty to exercise due care in the operation of the vehicle he was driving on or about June 11, 2025.

74. On or about June 11, 2025, decedent Eric Comer breached his duty to use due care in the operation of his vehicle, without limitation, in the following ways:

a. Failing to maintain and keep a proper lookout for vehicles and objects on and near the roadway;

b. Failing to have the vehicle he was operating under control;

c. Failing to comply with all state and federal rules of the road and regulations pertaining to commercial drivers;

d. Failing to operate his vehicle in a careful, safe, reasonable, and prudent manner; and

e. Failing to yield the right-of-way to oncoming traffic; and

f. Other acts or omissions.

75. The aforementioned breaches of duty and negligence by decedent Eric Comer, were a direct and proximate cause of the June 11, 2025, collision.

76. As the direct and proximate result of the negligence and carelessness of decedent Eric Comer, the Estate of Eric Comer is liable to Plaintiff Lyle Fuglestad for the damages described above.

### COUNT II –RESPONDEAT SUPERIOR
### Konnect Three/Konnect Three Solutions

77. Plaintiff realleges the preceding allegations as if set forth fully here.

78. Decedent Eric Comer was, at all times relevant hereto, and upon information and belief, operating a cement mixer truck in the course and scope of his employment with Defendants Konnect Three/Konnect Three Solutions.

79. Defendants Konnect Three and/or Konnect Three Solutions are liable under the doctrine of *respondeat superior* because an employer or principal is vicariously liable for the torts of an employee or agent committed within the course and scope of employment or agency with their employer or principal.

80. Defendants Konnect Three and/or Konnect Three Solutions are vicariously liable for the damages Plaintiff Lyle Fuglestad sustained, described above.

### Count III – NEGLIGENCE, NEGLIGENT ENTRUSTMENT, NEGLIGENT HIRING, TRAINING, SUPERVISION, and/or RETENTION
### Konnect Three/Konnect Three Solutions

81. Plaintiff realleges the preceding allegations as if set forth fully here.

82. Decedent Eric Comer was, at all times relevant hereto, and upon information and belief, operating a cement mixer truck in the course and scope of his employment with Defendant Konnect Three Solutions.

83. Defendants Konnect Three Solutions LLC and/or Konnect Three LLC operated as

14

an interstate motor carrier operating under United States Department of Transportation Number 4098950 and was subject to the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Parts 300–399.

84.    The FMCSRs imposed upon Defendants Konnect Three/Konnect Three Solutions an affirmative duty to investigate the background, qualifications, and driving history of any driver it employed or utilized to operate a commercial motor vehicle, including but not limited to obtaining the driver's motor vehicle record from every state in which the driver held or had held a license in the three years preceding employment, and investigating the driver's employment history for the preceding three years. 49 C.F.R. § 391.23.

85.    On or before June 11, 2025, Defendants Konnect Three/Konnect Three Solutions hired, retained, dispatched, and/or entrusted Eric Shawn Comer to operate the 2026 Western Star cement mixer truck from Dodge Center, Minnesota to Minot, North Dakota on the company/ies behalf and under its USDOT operating authority.

86.    At the time Defendants Konnect Three/Konnect Three Solutions hired and dispatched Comer, Comer was unfit, unqualified, and incompetent to operate a commercial motor vehicle in interstate commerce, as a reasonably diligent investigation of the type required by the FMCSRs would have readily revealed.

87.    Comer's driving record, criminal history, and hours-of-service violations demonstrated that he posed a foreseeable and unreasonable risk of physical harm to other users of the public roadways and rendered him unfit to operate a commercial motor vehicle.

88.    Defendants Konnect Three/Konnect Three Solutions knew or, in the exercise of reasonable care, should have known of Comer's unfitness at the time the company/ies hired and dispatched him, because this information was available through the basic pre-employment

15

investigation the FMCSRs required Konnect Three Solutions to undertake.

89. Defendants Konnect Three/Konnect Three Solutions also knew or should have known of Comer's propensity for hours-of-service non-compliance through its own direct experience: Comer received an Out-of-Service violation for hours-of-service non-compliance in April 2025, while operating a vehicle under Defendants Konnect Three/Konnect Three Solutions' USDOT number, yet Defendants took no remedial action and continued to entrust Comer with commercial motor vehicle operations.

90. Defendants Konnect Three/Konnect Three Solutions failed to provide Comer with adequate training concerning the requirements of the FMCSRs, including but not limited to hours-of-service regulations, required logbook maintenance, safe operation of commercial motor vehicles, and compliance with traffic control devices.

91. Defendants Konnect Three/Konnect Three Solutions failed to retain adequate records of Comer's hours of service, failed to review his logs for accuracy and compliance, and failed to take any corrective action despite Comer's prior out-of-service violation for hours-of-service non-compliance.

92. The negligence of Defendants Konnect Three/Konnect Three Solutions in hiring, training, supervising, and retaining Comer, as well as entrusting him with a motor vehicle, was a direct and proximate cause of the June 11, 2025, collision and the catastrophic injuries sustained by Plaintiff Lyle Fuglestad.

93. As the direct and proximate result of the conduct of Defendants Konnect Three/Konnect Three Solutions, Plaintiff Lyle Fuglestad sustained the damages described above.

## COUNT IV –NEGLIGENT SELECTION OF AN INDEPENDENT CONTRACTOR
### AJC Logistics

94. Plaintiff realleges the preceding allegations as if set forth fully here.

16

95.     The transport of a commercial motor vehicle in interstate commerce upon public highways is work that involves a foreseeable risk of physical harm to members of the public unless it is skillfully and carefully performed by a competent and qualified carrier and driver.

96.     Defendant AJC Logistics owed a duty to exercise reasonable care in selecting the motor carrier it hired to perform the subject transport.

97.     Defendant AJC Logistics breached that duty by selecting Konnect Three/Konnect Three Solutions to perform the transport when AJC knew or, in the exercise of reasonable care, should have known that Konnect Three/Konnect Three Solutions was an incompetent and unsafe carrier unfit to safely perform the work.

98.     Defendant AJC Logistics' negligent selection of Konnect Three/Konnect Three Solutions was a direct and proximate cause of the June 11, 2025, collision and the injuries and damages sustained by Plaintiff.

99.     As the direct and proximate result of the conduct of Defendant AJC Logistics, Plaintiff Lyle Fuglestad sustained the damages described above.

**Count V– NEGLIGENCE**
**AJC Logistics**

100.    Plaintiff realleges the preceding allegations as if set forth fully here.

101.    Decedent Eric Comer was, at all times relevant hereto, and upon information and belief, operating a cement mixer truck on behalf of and under the motor carrier authority of Defendant AJC Logistics.

102.    Defendant AJC Logistics operated as an interstate motor carrier operating under United States Department of Transportation Number 2247350 and was subject to the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Parts 300–399.

103.    The FMCSRs imposed upon Defendant AJC Logistics an affirmative duty to

17

investigate the background, qualifications, and driving history of any driver it employed or utilized to operate a commercial motor vehicle, including but not limited to obtaining the driver's motor vehicle record from every state in which the driver held or had held a license in the three years preceding employment, and investigating the driver's employment history for the preceding three years. 49 C.F.R. § 391.23.

104.    On or before June 11, 2025, Defendant AJC Logistics dispatched and/or entrusted Eric Shawn Comer to operate the 2026 Western Star cement mixer truck from Dodge Center, Minnesota to Minot, North Dakota on the company behalf and under its USDOT operating authority.

105.    At the time Defendant AJC Logistics dispatched Comer, Comer was unfit, unqualified, and incompetent to operate a commercial motor vehicle in interstate commerce, as a reasonably diligent investigation of the type required by the FMCSRs would have readily revealed.

106.    Comer's driving record, criminal history, and hours-of-service violations demonstrated that he posed a foreseeable and unreasonable risk of physical harm to other users of the public roadways and rendered him unfit to operate a commercial motor vehicle.

107.    Defendant AJC Logistics knew or, in the exercise of reasonable care, should have known of Comer's unfitness at the time the company dispatched him or entrusted him with a commercial motor vehicle.

108.    Defendant AJC Logistics also knew or should have known of Comer's propensity for hours-of-service non-compliance due to his violation for hours-of-service non-compliance in April 2025, yet Defendant took no remedial action and entrusted Comer with commercial motor vehicle operations.

109.    Defendant AJC Logistics failed to provide Comer with adequate training

18

concerning the requirements of the FMCSRs, including but not limited to hours-of-service regulations, required logbook maintenance, safe operation of commercial motor vehicles, and compliance with traffic control devices.

110.    Defendant AJC Logistics failed to retain adequate records of Comer's hours of service, failed to review his logs for accuracy and compliance, and failed to take any corrective action despite Comer's prior Out-of-Service violation for hours-of-service non-compliance.

111.    The negligence of Defendant AJC Logistics in supervising and retaining Comer, as well as entrusting him with a motor vehicle, was a direct and proximate cause of the June 11, 2025, collision and the catastrophic injuries sustained by Plaintiff Lyle Fuglestad.

112.    As the direct and proximate result of the conduct of Defendant AJC Logistics, Plaintiff Lyle Fuglestad sustained the damages described above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands Judgment against Defendants, and each of them, jointly and severally, for reasonable amounts to be proven at the time of trial, in excess of Seventy-Five Thousand Dollars ($75,000.00), together with the costs and disbursements of this action incurred herein, pre-judgment interest, interest on the Judgment as allowed by law, and for all such other relief the Court deems just and equitable.

**JURY TRIAL IS DEMANDED.**

**NICOLET LAW OFFICE, S.C.**

Dated:   June 25, 2026

/s/ Russell D. Nicolet
Russell D. Nicolet
Lindsay C. Lien Amin
517 2nd Street, Unit 205
Hudson, Wisconsin 54016
Telephone: (715) 377-2141
Facsimile: (715) 598-6188
russell@nicoletlaw.com
lindsay@nicoletlaw.com

19